UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ANDREW CRAIG ALDRIDGE,**

      **Plaintiff,**

v.                                                      **CIVIL ACTION 2:14-cv-24814**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 7), Brief in Support of Defendant's Decision (ECF No. 8) and Plaintiff's Reply to Defendant's Brief in Support of Decision (ECF No. 9).

### Background

Andrew Aldridge, Claimant, applied for disability insurance benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act on December 18, 2012, alleging disability on November 30, 2012. (Tr. at 140-146). The claim was denied initially on January 4, 2013 (Tr. at 57-64), and upon reconsideration on January 25, 2013. (Tr. at 66-75). Claimant filed a request for hearing on February 5, 2013. (Tr. at 92-93). In his request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that he disagreed with the determination made on his claim for disability-worker benefits because the decision was contrary to the medical evidence and D regulations. (Tr. at 92). Claimant appeared in person and testified at a hearing held on March 10, 2014, in Parkersburg, West Virginia.[1] (Tr. at 29-56 and Tr. at 101-115). In

---

[1] The hearing was by video teleconference. Claimant was in Parkersburg, West Virginia, and the ALJ was in

the Decision dated April 8, 2014, the ALJ determined that Claimant was not disabled under the Social Security Act. (Tr. at 11-28). On May 2, 2014, Claimant filed a Request for Review of Hearing Decision of the ALJ because the ALJ's decision was contrary to the medical evidence and regulations. (Tr. at 7). The Appeals Council granted Claimant's request for review of the ALJ's and on June 17, 2014, received additional evidence which was made part of the record and listed as Exhibit 11E, Representative Brief from Jan Dils, dated June 2, 2014 (Tr. at 5). On June 17, 2014, the Appeals Council considered Claimant's reasons for disagreement with the decision, found that the additional evidence did not provide a basis for changing the ALJ's decision and denied the request for review (Tr. at 1-6).

On August 18, 2014, Claimant bought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse, remand or modify that decision.

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the

---

Charleston, West Virginia, or another location.

Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of November 30, 2012[2] (Tr. at 16). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of post-traumatic stress disorder (PTSD), anxiety disorder, depression and ischemic heart disease. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 17). The ALJ then found that Claimant has a residual functional capacity to perform work at less than full range of medium exertional level, reduced by exertional and nonexertional limitations[3] (Tr. at 18). As a result, the ALJ determined that Claimant is capable of performing

---

[2] Claimant's earnings record shows that he acquired sufficient quarters of insurance coverage to remain insured through December 31, 2007. As a result, Claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits (Tr. at 14).

[3] Claimant can lift and carry 50 pounds occasionally, 25 pounds frequently, stand/walk 6 hours and sit 6 hours in an

his past relevant work as a stocker (Tr. at 23). The ALJ concluded that Claimant could perform jobs such as hand packer, factory helper and loader helper, all of which exist in significant numbers in the national and regional economy (Tr. at 24). On this basis, benefits were denied (Tr. at 25).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

---

8-hour workday. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds; stoop; crouch; and crawl. He can frequently balance and kneel. He must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor and hazards including machinery and heights. He can perform simple, routine, repetitive tasks that do not require prolonged close attention to detail and only occasional contact with the public (Tr. at 18-19).

Claimant's Background

Claimant testified that he was born on September 6, 1976, was divorced, and had completed the twelfth grade (Tr. at 35, 41). He stated that he last worked as a certified nursing assistant (CNA) and performed mostly patient care (Tr. at 35). Claimant described this position as requiring mostly standing and walking and working in teams to lift patients into bed and to help patients walk. (*Id.*) Claimant indicated he had received verbal warnings and written discipline for being late and not answering his phone when on call (Tr. at 40). He stated that he also had previous work as a cook while serving in the United States Navy (Tr. at 35-36). Claimant indicated he was discharged in July 2010 and then performed work as a CNA and a janitor for the VA hospital and as a stocker at Office Depot (Tr. at 36-37).

Claimant testified that he had a hard time concentrating and following orders due to anxiety and panic attacks that occur at least once a day (Tr. at 39, 40). Claimant described an anxiety attack as feeling "like the whole world's caving in on me, I can't breathe" (Tr. at 41). Claimant admitted to chronic tension headaches and bowel issues related to stress and anxiety (Tr. at 45). He stated he had been treating with Dr. Clatterbuck once a month for about two or three years and with Dr. Priestly who prescribed Venlafaxine and Hydroxyzine (Tr. at 39-40). Despite medication, Claimant stated that he rarely left his house or interacted with people (Tr. at 41).

In regards to his PTSD, Claimant testified that the sound of a truck or the smell of diesel will remind him of what he saw when he was in the military (Tr. at 43). Claimant stated he had nightmares up to three or four times a week that are not alleviated with sleep medication and experienced flashbacks (Tr. at 43, 46). Claimant asserted that he feels on guard during the day and had an alarm system installed (Tr. at 44). Claimant stated that he did some grocery shopping

but mostly bought food through drive-thru windows (Tr. at 42). He admitted to running outside or in the park while listening to music (Tr. at 43). Claimant asserted that his self-isolation led to the destruction of his marriage and relationships with friends and family (Tr. 41-42).

## The Medical Record

The court has reviewed all evidence of record, and will address those portions which are relevant to the issues raised by Claimant.

## Claimant's Challenges to the Commissioner's Decision

Claimant cites to *Reece v. Colvin*, No. 1:13-CV-924, 2014 U.S. Dist. LEXIS 69395 (M.D.N.C. May 21, 2014), to support his position that the ALJ failed to correctly give appropriate weight to the VA's decision or, in the alternative, provide "a specific and detailed rationale" so that the claimant could understand the basis for the adverse decision (ECF No. 9). Claimant asserts that the "critical report relied upon by the VA" in the *Reece* decision is on point here and is instructive because that case also involved an ALJ's cursory review of a claimant's United States Department of Veteran's Affairs (VA) rating decision. As in this case, the ALJ in the *Reece* case "noted she was required to consider [the VA rating decision] but emphasized that it was not binding upon the Commissioner." *Id.* And, as in this case, the ALJ in the *Reece* case "failed to cite anything in the record to support her conclusion that Reece's knee pain is now less significant because it can be relieved by regular steroid injection, other than Reece's "substantial physical activities of daily living." *Id.* The court held, "it is not possible to determine whether the record "clearly demonstrates" that less than substantial weight should have been accorded the VA's disability rating. *Id.,* citing *Salazar v. Colvin*, 1:10CV972, 2014 U.D. Dist. LEXIS 14694, 2014 WL 486726, at *6 (M.D.N.C. Feb. 6, 2014).

G. David Allen, Ph.D., reviewed Claimant's file and completed a Psychiatric Review Technique form (PRTF) and Mental Residual Functional Capacity assessment (MRFC) at the request of the State agency. Dr. Allen evaluated Claimant's mental impairments of affective disorders under Listing 12.04 and anxiety disorders under Listing 12.06 (Tr. at 59-60). Dr. Allen opined that Claimant had mild restriction of activities of daily living and moderate difficulties in social functioning and in maintaining concentration, persistence, and pace (Tr. at 60). He concluded that the evidence did not support a finding that Claimants met the requirements of paragraph c criteria.[4] (*Id.*).

In the MRFC, Dr. Allen asserted that Claimant was moderately limited in his ability (1) to carry out detailed instructions; (2) to maintain attention and concentration for extended periods; (3) to interact appropriately with the general public; (4) to accept instructions and respond appropriately to criticism from supervisors; and (5) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. at 61-62). Additionally, Dr. Allen stated that Claimant had a "history of preoccupation with anxiety and vigilance to prevent anxiety attacks such that his attention is frequently divided" and was "better suited, at this time, for solitary activities" (Tr. at 62). Bob Marinelli, Ed.,D., a State agency psychological expert, reviewed and affirmed Dr. Allen's assessment on January 25, 2013 (Tr. at 72-73).

Furthermore, Chris Clatterbuck, Ph.D., Claimant's treating psychologist for approximately three years, completed a MRFC and provided numerous marked and moderate

---

[4] Listing 12.04C requires:
Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

limitations in Claimant's ability to perform work-related mental activities (Tr. at 467-470). However, the ALJ gave this opinion little weight, and stated the following:

> The undersigned gives little weight to this opinion, as the limitations are extreme and not supported by the treatment record including the mental status examinations of the claimant and the records showing the claimant's condition improved with treatment (Exhibits 1F and 2F). Further, the undersigned gives little weight as the doctor's statement indicating the claimant is "permanent disability" or "unable to work" is not a medical opinion, but rather an administrative finding dispositive of a case. These issues are reserved to the Commissioner, and as such are not entitled to any special significant weight…
> (Tr. at 22).

### Consideration of VA Decision

The VA's decision reflects Claimant's compensation at 100% for PTSD with major depressive disorder, effective July 14, 2011 (Tr. at 160). The Social Security regulations provide that "evidence" includes "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled or blind." 20 C.F.R. § 404.1512(b)(5) (2014). The decision of another agency is not binding on the SSA, 20 C.F.R. § 404.1504, but the SSA is required to evaluate all the evidence, including decisions by other agencies. Moreover, Social Security Ruling 06-03p states that "evidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered." The Ruling provides that "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases . . .."

The Fourth Circuit has held that "the disability determination of a state administrative agency is entitled to consideration in a SSA disability proceeding…. [A]lthough the SSA will accept another agency's disability determination as evidence of a claimant's condition that agency's decision is not binding on the SSA." *Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012).

In *Bird*, the Fourth Circuit discussed the role that disability decisions by governmental agencies play in the SSA's disability determination process. Pointing to circuit precedent and social security directives, the Court stated the general rule is that while these decisions are not binding on the SSA, they "cannot be ignored and must be considered" when determining a claimant's eligibility for social security disability benefits. *Halstead v. Colvin, 2015 U.S. Dist. LEXIS 15281 (S.D. W.Va., January 8, 2015)* (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 n. 1 (4th Cir. 1983) and SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, at *6 (Aug. 9, 2006)).[5]

Similar to the instant case, the claimant in *Bird* had been awarded disability benefits through the VA, but was found not disabled by an ALJ under the Social Security Act. The district court affirmed the Commissioner's decision. On appeal, the claimant argued, in relevant part, that the ALJ had failed to afford adequate weight to the VA's disability determination. In considering the argument, the Fourth Circuit acknowledged that it had not previously addressed the precise weight that the SSA should give to disability ratings by the VA and noted that sister circuits had found varying degrees of deference to be appropriate. The Court reasoned that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* In addition, "[b]oth programs

---

[5] SSR 06-03p, 2006 SSR LEXIS 5 provides inter alia:

> Under sections 221 and 1633 of the Social Act, only a State agency or the Commissioner can make a determination based on Social Security law that you are blind or disabled. Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, 1996 SSR LEXIS 2 "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). Consequently, the Court concluded that "because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, the Court held:

> [I]n making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

In *Wyche v. Colvin*, 2014 U.S. Dist. LEXIS 62589 (E.D. Va., March 25, 2014), the court found that the opinion in *Bird* created a new standard. The court held that a presumption of substantial weight given to the VA's determination under the new *Bird* standard now requires the ALJ to "explain" why he departed from "substantial weight." *Wyche* citing *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010)(ALJ departing from substantial weight must give "specific, valid reasons for doing so that are supported by the record.").

The Commissioner asserts that this case is distinguishable from *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012) because the evidence considered by the VA and the ALJ in making their respective determinations was different evidence (ECF No. 8). It is too late now for the Commissioner to provide reasons to justify the ALJ's determination. The Commissioner's *post hoc* rationale does not cure this reversible error. *See, SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto Ins. Co.*,

463 U.S. 29, 50 (1983), *citing Burlington Truck Lines Inc. v. United States*, 371 U.S. 151, 168 (1962); *Luster v. Astrue*, 2011 U.S. Dist. LEXIS 60596, 2011 WL 2182719 (D.S.C. 2011); *Tanner v. Astrue*, 2011 U.S. Dist. LEXIS 61737, 166 Soc. Sec. Rep. Service 545, 2011 WL 2313042 (D.S.C. 2011). The critical report relied upon by the VA was a comprehensive psychological report and medical opinion from psychologist, Shelley Savage, Psy.D. (Tr. at 263-290), and the ALJ did not assess Dr. Savage's report.

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

Claimant asserts the following:

> The Administrative Law Judge dismissed the ratings of the VA out of hand. He wrote that they are not "binding" on the Social Security Administration and "different rules and standards" apply for his decision. This is clear error. The Administrative Law Judge should have started his analysis with "substantial weight" given to the VA ratings of 100% and 30% and then detailed his

11

analysis why those ratings do or do not apply here[6] (Tr. at 246).

The Commissioner asserts that the ALJ was not required to explicitly discuss Claimant's November 14, 2012 examination by Dr. Savage (Tr. 266-88). Although Claimant refers to this record as an "opinion," it is actually an examination of Claimant. This examination discussed Claimant's social background, the events leading to Claimant's PTSD, and reviewed the criteria for a PTSD diagnosis, but did not discuss any prognosis or statements reflecting Claimant's restrictions. 20 C.F.R. § 404.1527(a)(2) (medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The Commissioner asserts that Dr. Savage's examination is not an opinion, therefore, the ALJ did not need to weigh it. 20 C.F.R. § 404.1527(c) (an ALJ is only required to state the weight ascribed to medical opinions).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an

---

[6] At the hearing, the ALJ acknowledged the following about Aldridge's 100 percent service-connected disability and the November 2012 VA Ratings Decision:

> I understand that the new evidence shows that you were - you got 100 percent rating from the VA Administration. We haven't got to the point where the VA 100 percent equals Social Security disability yet. We use a little bit of different standard, but that is a credible evidence that we have to use in terms of making any Social Security disability decision.

exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'"). The Commissioner asserts that although the ALJ did not specifically reference this exam, the ALJ discussed the VA mental health records. The Commissioner asserts that the ALJ was not required to specifically discuss the November 14, 2012, examination in his determination, and remand is not warranted on this basis. The Commissioner avers that the ALJ's decision was supported by substantial evidence.[7]

An ALJ may give less weight to a VA disability rating and does not have to give the VA's opinion significant weight. See *Cline v. Michael J. Astrue*, Case No. 6:12-cv-00690 (Parkersburg, WV 2013)(unpublished). In the present case, the VA held that Claimant was 100% disabled for PTSD with major depressive disorder (Tr. at 160). The ALJ did not discuss what percentage of weight he gave the VA's determination. Although the ALJ stated that his deviation from giving the VA's disability decision substantial weight was based on medical and other evidence in the record, he did not sufficiently explain or refer to which medical and other evidence in the record that was considered.

In *Cline*, the court held that a brief, conclusory assertion by the Commissioner that the ALJ considered the determination of the VA is not a situation where the ALJ truly considered the decision and the analysis of the evidence contained therein. The court held that "The ALJ's decision lacks an explanation of his consideration given to the VA's decision." See *Cline*. The ALJ's decision denying benefits was not supported by substantial evidence due to the failure to explain the VA's decision as required by the regulations and Social Security Ruling 6-03p.

---

[7] Although Claimant notes that neither the ALJ nor the State agency ordered an independent psychological evaluation of Claimant, an ALJ is granted the discretion as to whether to order a consultative examination. 20 C.F.R. § 404.1519a; *Lamp v. Colvin*, 2014 WL 4418167, at *8 (S.D. W.Va. Sept. 5, 2014).

In the present case, the ALJ held that it recognized the VA's disability determination and found that Claimant's PTSD does not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 23). The ALJ stated that a decision from the Veteran's Administration Medical Center (VAMC) dated November 29, 2012, showed Claimant's global assessment of functioning (GAF) level to be 54, which indicates moderate symptoms (Tr. at 22). The ALJ stated that Claimant's PTSD met the required criteria to render 100% disability from the Veteran's Administration, however, he gave "little weight to this rating as it is not supported by the evidence in the record for Social Security disability purposes" (Tr. at 22-23).

The VAMC records reflect that the reason for the 100% disability rating was for PTSD with major depressive disorder directly relating to his military service (Tr. at 165). The rating decision dated November 28, 2012, reports that 100% was assigned to his evaluation for PTSD based on the following:

- Disorientation to place;
- Disorientation to time;
- Persistent delusions;
- Persistent hallucinations;
- Difficulty in adapting to a work-like setting;
- Difficulty in adapting to stressful circumstances;
- Impaired impulse control;
- Inability to establish and maintain effective relationships;
- Suicidal ideation;
- The examiner's assessment of your current mental functioning, which is partially reflected in your Global Assessment of Function score found below;
- Difficulty in establishing and maintaining effective work and social relationships;
- Disturbances of motivation and mood;
- Impaired judgment;
- Panic attacks more than once a week;
- Anxiety;
- Chronic sleep impairment;
- Depressed mood; and
- Occupational and social impairment due to mild or transient symptoms which

14

>decrease work efficiency and ability to perform occupational tasks only during periods of significant stress (Tr. at 165-166).

The VAMC relied upon a PTSD evaluation performed by examining psychologist, Shelley Savage, PsyD (Tr. at 266-283). Dr. Savage provided the following remarks regarding Claimant's evaluation and psychological assessment:

>Veteran engaged in clinical and diagnostic assessment for 3 hours, completing the Beck Depression Scale-II, Beck Anxiety Scale, Beck Hopelessness Scale, PTSD Checklist - Military, and the Mississippi Scale for Combat-Related Post-Traumatic Stress Disorder…Examination results support diagnosis of Post Traumatic Stress Disorder with GAF of 54.
>
>Veteran was casually dressed and cooperative. He was oriented [times three] and anxious. He often slouched over, cradling his head in his hands. Throughout the session, veteran engaged diaphragmatic breathing identifying anxious symptoms (shallow breathing, increased heart rate and feeling like everything [is] caving in).
>
>(Tr. at 281).

In establishing the diagnosis of PTSD, Dr. Savage applied the six criteria, known as Criteria A through F, from the Diagnostic and Statistical Manual of Mental Disorders, 4th edition ("DSM-IV) (Tr. at 278).

Criterion A

- The Veteran has been exposed to a traumatic event where both of the following were present.
- The Veteran experienced, witnessed or was confronted with an event that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others.
- The Veteran's response involved intense fear, helplessness, or horror.

Criterion B

The traumatic event is persistently re-experienced in 1 or more of the following ways:

- Recurrent and distressing recollections of the event, including images, thoughts, or perceptions

- Recurrent distressing dreams of the event
- Acting or feeling as if the traumatic event were recurring; this includes a sense of reliving the experience, illusions, hallucinations and dissociative flashback episodes, including those that occur on awakening or when intoxicated
- Intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event
- Physiological reactivity on exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

Criterion C

Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by 3 or more of the following:
- Efforts to avoid thoughts, feelings, or conversations associated with the trauma
- Efforts to avoid activities, placed, or people that arouse recollections of the trauma
- Markedly diminished interest or participation in significant activities
- Feeling of detachment or estrangement from others
- Sense of a foreshortened future (e.g., does not expect to have a career, marriage, children or normal life span)

Criterion D

Persistent symptoms of increased arousal, not present before the trauma, as indicated by 2 or more of the following:
- Difficulty falling or staying asleep
- Irritability or outburst of anger
- Difficulty concentrating
- Hypervigilance
- Exaggerated startle response

Criterion E

The duration of the symptoms described in Criteria B, C, and D is more than 1 month.

Criterion F

The PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning (Tr. at 278-279). Dr. Savage checked the box that indicated Claimant's diagnosis was related to "stressor #1," which was described as the following:

16

> Veteran was an Iraq combat veteran in 2003 to 2004. He was actually on the flight deck of an aircraft carrier (USS George Washington CVN-73). He described an incident that occurred that was traumatic for him. Apparently, the wire that catches the planes that came in broke and flew "right next to me" and this hit some fellow sailors. He remembers looking over and seeing a lot of people down. They immediately called "mass casualties", prompting the clearance of the flight deck. He said he was taken below deck with others. The patient did fear for his life and felt helpless. He was not told of what had actually happened. He did not know if there were actually fatal casualties or severely wounded people, etc. At the time, he thought the accident was related to a terrorist attack since it happened around the time of 9/11 ("When it happened I was first really in shock, it kind of happened slow, like this isn't happening…It just [sic] happened so fast…Afterwards…it was the first thing I thought.
> (Tr. at 276-277, 279).

The ALJ failed to clearly demonstrate that a deviation from the VA's disability rating is appropriate. The undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to weigh the disability rating decision of the VA pursuant *to Bird*. If the ALJ still concludes that the VA's disability rating should be given "little weight" he/she shall provide a specific and detailed rationale so that Claimant may understand the basis for the adverse decision.

Additionally, the ALJ's treatment of the opinion of treating psychologist, Chris Clatterbuck, Ph.D., was erroneous. In support of the ALJ's finding that Dr. Clatterbuck's opinion was entitled to "little weight" the Commissioner again presents *pro hac* rationale to support the ALJ's finding and, again, that rationale cannot substitute for or cure the ALJ's rational which did not reach the level of "good reasons" for rejecting the doctor's opinions. Therefore, the undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to weigh

the opinion of Dr. Clatterbuck and discuss rational to support the ALJ's finding. Other issues raised by the parties shall be addressed on remand.

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Complainant's Brief in Support of Judgment on the Pleadings, **DENY** the Commissioner's Brief in Support of the Defendant's Decision, **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) because the ALJ failed to adequately explain the weight afforded the opinion of Dr. Clatterbuck and the VA's disability rating and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d

91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 16, 2015

Dwane L. Tinsley
United States Magistrate Judge